UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| REBEKAH MCCLELLAND, | ) | CASE NO.: 1:15-cv-01997 |
| individually and as next friend of | ) | |
| MANUEL DEJESUS IV, a minor | ) | |
| 1106 Hillstone Road | ) | JUDGE: DAN AARON POLSTER |
| Cleveland Heights, Ohio 44121 | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RUFFING MONTESSORI SCHOOL | ) | |
| 1285 Orchard Park Drive | ) | |
| Rocky River, Ohio 44116-2045 | ) | **SECOND AMENDED COMPLAINT** |
| | ) | **WITH JURY DEMAND** |
| Also serve Ruffing Montessori at: | ) | |
| | ) | |
| c/o JOHN McNAMARA, statutory agent | ) | |
| 22900 Westwood Road | ) | |
| Fairview Park, Ohio 44126 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN McNAMARA, individually and in | ) | |
| his official capacity as Administrator of | ) | |
| Ruffing Montessori School | ) | |
| c/o Ruffing Montessori School | ) | |
| 1285 Orchard Park Drive | ) | |
| Rocky River, Ohio 44116-2045 | ) | |
| | ) | |
| Also serve Mr. McNamara at: | ) | |
| | ) | |
| 22900 Westwood Road | ) | |
| Fairview Park, Ohio 44126 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LORI COTICCHIA, individually and in | ) | |
| her official capacity as Administrator of | ) | |
| Ruffing Montessori School | ) | |
| c/o Ruffing Montessori School | ) | |
| 1285 Orchard Park Drive | ) | |
| Rocky River, Ohio | ) | |

Also serve Ms. Coticchia at:          )
                                      )
21425 Avalon Drive                    )
Rocky River, Ohio 44116               )
                                      )
        Defendants.                   )

## SECOND AMENDED COMPLAINT
## WITH DEMAND FOR TRIAL BY JURY

Now come the Plaintiffs, Rebekah McClelland, individually and on behalf of and/or together with Manuel DeJesus IV, a minor (hereinafter, "the Minor Plaintiff" or "Manny" or "the Child"), and for their Complaint against Defendants Ruffing Montessori School, John McNamara, and Lori Coticchia (collectively, "Defendant" in the singular and "Defendants" in the plural as the context shall indicate), declare and state as follows:

## THE PARTIES

1.      Plaintiff Rebekah McClelland (hereinafter, "Ms. McClelland") is a natural person, a citizen of the United States and a resident of the State of Ohio, and is the natural mother, residential parent and legal custodian of the Minor Plaintiff.

2.      The Minor Plaintiff is a natural person, a citizen of the United States and a resident of the State of Ohio, and a former student at Ruffing Montessori School.  The Minor Plaintiff is well-known to the defendants and thus shall not be identified further for privacy reasons.  The Minor Plaintiff currently suffers from autism and is thereby disabled under 42 U.S.C. §12102 and 28 C.F.R. Part 36.  The minor child identifies as Hispanic in ethnicity.

3.      Defendant Ruffing Montessori School ("Ruffing") is a private Montessori School located at 1285 Orchard Park Drive, Rocky River, Ohio 44116, and which is organized and operated as a non-profit corporation under the laws of the state of Ohio, duly licensed and filed

2

with the Ohio Secretary of State, certificate no. 293087, and is furthermore a "place of public accommodation" as that term is defined under Title III of the Americans with Disabilities Act (hereinafter, "Title III"), 42 U.S.C. §12181(7)(J), which holds itself open to the general public for application for admission to the school, and the operation of which affects interstate commerce.

4.      Defendant John McNamara ("Defendant McNamara") currently serves as the school principal at Ruffing and is responsible for all admission decisions, including the provision of reasonable accommodations for students with disabilities who attend Ruffing, as well as for creating and utilizing standards or criteria or methods of administration of Ruffing; upon information and belief, Mr. McNamara also serves as an officer or director of Ruffing.

5.      Defendant Lori Coticchia ("Defendant Coticchia") is an employee and administrator of Defendant Ruffing and responsible for making admission and enrollment decisions for Ruffing, including but not limited to establishing admission criteria, creating and utilizing standards or criteria or methods of administration of Ruffing; determining codes of conduct, teacher discipline, classroom procedures, and reasonable accommodations for disabled students who attend Ruffing under the ADA; upon information and belief, Ms. Coticchia reports directly to Defendant McNamara, and also may serve as a member, officer or director of Ruffing.

## JURISDICTION AND VENUE

6.      Plaintiffs re-allege and reincorporate Paragraphs One through Five of their Complaint as if fully rewritten herein.

7.      This Court has jurisdiction under 28 U.S.C. §1331, and under Title III of the ADA, 42 U.S.C. § 12181 *et seq*., and 28 C.F.R. §36.501(a) to afford Plaintiffs civil relief as

3

prayed for herein; this Court may also properly exercise pendant jurisdiction over Plaintiffs' state statutory and common law claims under 28 C.F.R. §1367.

8.     Venue properly lies with the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C. §1391(b).

## STATEMENT OF THE FACTS[1]

9.     Plaintiffs re-allege and reincorporate the allegations set forth in Paragraphs One through Eight of their Complaint as if fully rewritten herein.

10.     The Minor Plaintiff was born on December 16, 2004 in Westlake, Ohio and is currently 10 years old.

11.     In the summer of 2010, Plaintiff Ms. McClelland, with the consent and participation of her ex-husband Manuel DeJesus, Jr., applied on behalf of the Minor Plaintiff for kindergarten enrollment at Ruffing for 2010-2011 academic year.  Eventually, Ruffing accepted the Minor Plaintiff as a first grade student and enrolled him for the 2011-2012 academic year.

12.     By a ruling in October of 2012, an Ohio domestic relations court designated Ms. McClelland the sole residential parent and legal custodian of the Minor Plaintiff, with sole decision-making authority over the Child's placement, schooling, and medical care.

13.     During the course of his first grade education, the Minor Plaintiff began to display certain behavior patterns, leading Ms. McClelland to suspect that the child suffered from autism or Asperger's syndrome.   As a result of this suspicion, Ms. McClelland had the child tested at the Cleveland Clinic, which test determined that the Minor Plaintiff's behavior and symptoms

---

[1] Throughout this Statement of Facts, Plaintiffs allege and continue to allege that the Minor Plaintiff met all eligibility requirements for continued enrollment at Ruffing, as dictated by Ruffing's Enrollment Contract, a true and accurate copy of which is attached hereto and incorporated herein as Exhibit A.

were consistent with and fell along the autistic spectrum.  This diagnosis occurred on or about June 14, 2012.  Upon receiving this diagnosis, Ms. McClelland immediately notified Ruffing, which acknowledged the diagnosis and agreed to work with Ms. McClelland and the child's counselors so as to continue to provide a Montessori education to the Minor Plaintiff, including the provision of special services tailored to Manny's condition.

14.    The Minor Plaintiff blossomed and flourished at Ruffing, in spite of his autism. The Child consistently performed superiorly on standardized tests, traditionally responded well to the classroom environment, did not disrupt the classroom and was otherwise respectful to the staff and his classmates at Ruffing.  The Child enjoyed several friendships with fellow students during his years at Ruffing, never presented a disciplinary or scholastic problem, and was generally "well-loved" by students and faculty alike.

15.    Furthermore, while the Minor Plaintiff suffered from autism during his years at Ruffing, the Child required little accommodation from the school, either as an educational institution on the whole, or from its teachers and faculty individually.  From time to time, small accommodations were made so that the Minor Plaintiff would "stay on task" and maintain his concentration, but these measures amounted to little more than allowing Manny to complete his schoolwork near his teacher's desk, an accommodation specifically requested by Manny himself. Manny's autism did not require any special or undue attention to Manny as a student nor did Manny's requirements interfere with any of his teachers' duties to the class as a whole or to fellow students individually.[2]

---

[2] Ruffing's summary disenrollment of Manny prior to the start of the 2015-2016 academic year, discussed *infra*, serves to indicate Ruffing's unwillingness (in the micro sense) to further provide Manny with prior accommodations, as well as to confirm (in the macro sense) to the academic world that Ruffing would heretofore refuse to implement any accommodations for children with autism, in blatant violation of the ADA.

16.     The only substantive accommodation provided to Manny by Ruffing was to allow Manny to take his yearly standardized tests outside of the classroom, and to allow Manny twice the allotted time to complete the exams.

17.     Ruffing prides itself on providing a "whole child" education, i.e., one that addresses the academic, physical, and social development of the student.  On its website, Ruffing provides the following information:

> Ruffing Montessori School dedicates itself to providing a quality Montessori education for children aged three through fourteen. The school, founded in 1959, has been a pioneer in the Montessori approach to education in Ohio and in the United States. Ruffing was the second Montessori school in the United States at both the pre-primary and elementary levels. In 1977, Ruffing became the first Montessori school in Ohio to be accredited by the state to operate through the eighth grade. [3]

18.     In May of 2015, Ms. McClelland had a telephone conversation with Defendant Coticchia regarding the upcoming educational year at Ruffing; during this conversation, Ms. Coticchia unceremoniously informed Ms. McClelland that Manny "was no longer welcome" at Ruffing, that Ruffing had nothing further to offer the Child, and accordingly, Defendant Coticchia advised Ms. McClelland to make alternative arrangements for Manny's continued schooling.[4]  During this telephone conversation, Ms. Coticchia confirmed that the decision to terminate Manny's enrollment was based upon Manny's autism.

19.     Two weeks later, Ms. McClelland met with Defendant McNamara, who attempted to explain the situation but otherwise ratified Manny's termination.  Throughout this meeting,

---

[3] http//www.ruffingmontesorri.org, (last accessed on November 30, 2015).  Ruffing further boasts "the success of our mission will be strengthened by the partnership between the child, school community, and the family."

[4] This, despite Ms. McClelland having already deposited the next year's tuition retainer and having also already submitted all re-enrollment forms required by Ruffing related to Manny's upcoming academic year.

Defendant McNamara remained ambivalent and noncommittal, at one point appearing to attempt to mollify Ms. McClelland by "suggesting" that Manny could "return" to Ruffing for the upcoming academic year, while in the same conversation emphasizing that he and Defendant Coticchia had already discussed the matter and were in full agreement as to the propriety of termination from enrollment at that time.  Defendant's McNamara's attempt to "unring" the bell smacks of a bad-faith attempt to mar the record in this case with uncertainty

20.     When Ms. McClelland pressed Defendant McNamara as to whether Manny's continued enrollment at Ruffing was secure, Defendant McNamara refused to provide such assurances.  Moreover, when Ms. McClelland inquired with Ms. Coticchia as to what further accommodations Manny would need, or which further accommodations could be implemented, so as to allow Manny to remain enrolled at Ruffing, Ms. Coticchia merely reiterated the "company line" that nothing further could be done for Manny, that Manny was not a good fit at Ruffing, and that Manny should seek elsewhere for his education needs. [5]

21.     In fact, neither Mr. McNamara nor Ms. Coticchia—despite several conversations with the Plaintiff—offered any ideas of any kind related to accommodations or other possible changes pertaining to classroom size, staff guidance, or other assistance-related measures[6] that would in any way accommodate Manny's autism.  In short, Ruffing neither sought nor received

---

[5] In fact, in an email dated May 20, 2015 to a Tina Schneider of Cleveland Montessori School (copied to Ms. McClelland), Defendant Coticchia confirmed that Ruffing was unable and unwilling to allow Manny to remain at Ruffing.  See email dated May 20, 2015, a true and accurate copy of which is attached hereto and incorporated herein as Exhibit B.

[6] In an attempt to pass off Ruffing's "problem" to another Montessori school, Ms. Coticchia's reached out to Cleveland Montessori School, but only so as to inform it about Manny's autism and that Ruffing's "class size" would be "too large to give him the attention he needs for 5th grade."  Nowhere in this correspondence did Ms. Coticchia make inquiries or solicit suggestions as to any ideas Cleveland Montessori might have to accommodate Manny.

any guidance—official or otherwise—as to what it could do as an educational institution falling under Title III of the ADA to better accommodate Manny, other than to unilaterally terminate his enrollment.  Ruffing did not take into account any suggestions made by the Plaintiff, nor did it take into account Manny's past performance and "high-functioning" disability.  In this vein, Ms. McClelland never requested any type or form of accommodation for Manny that would in any way alter the fundamental structure of Ruffing's style of Montessori education, run contrary to the nature of Montessori education in general, or require a special expenditure earmarked for Manny alone.

22.    As part of its enrollment process, Ruffing drafted and circulated to all current and prospective parents a "Ruffing Montessori School 2015-2016 Reservation Agreement and Enrollment Contract" authorizing early enrollment for the upcoming 2015-2016 school year. See Exhibit A.  Nothing in this Reservation Agreement authorized or permitted Ruffing, without more, to unilaterally terminate a student's enrollment so long as the student's parent paid a non-refundable $500.00 per child "Advance Tuition Deposit" by the re-enrollment deadline of February 15, 2015 or otherwise to Ruffing's satisfaction.

23.    Buried within this "Reservation Agreement and Enrollment Contract" appeared language attempting to limit the scope of the agreement and set forth the rather draconian measures Ruffing would undertake for any 'non-complying' family.[7]

> In consideration of the acceptance of this Reservation Agreement and Enrollment Contract by RMS, the undersigned agrees to pay the required

---

[7] "Draconian" from the perspective that should an employee or staff member at Ruffing take a disliking to any particular parent for any particular reason, the Ruffing Administration could (and presumably would) exact a penalty upon the parent by taking action against the innocent child of the disfavored parent, either through refusal to admit the child to class, denial of admission to the child, or removal of the child from the school's roster.

tuition and fees in accordance with the terms set forth in the Ruffing
Montessori School Financial Policy listed on the reverse of this sheet.
The undersigned agrees that no refund or cancellation of tuition will be
made by RMS for absence, withdrawal or dismissal before the end of the
school year and agrees to assume full responsibility for the full annual
tuition and fees.   This Reservation and Enrollment Agreement is valid for
one year and is not binding until signed and returned by the parent or
guardian.   This Agreement is conditioned upon payment in full of the
current year's tuition, the child(ren) finishing the current school year in
good standing and the parents maintaining a continuous, harmonious
relationship with the staff and fellow parents of RMS.

If these conditions are not met, RMS shall have the right to refuse to admit
the child(ren) to class, to deny admission to the child(ren), or to remove
the child(ren) from the school's roster.   In that instance, the undersigned
agrees that both the arrears and any and all tuition and fees remaining due
from the family for the full school year shall become immediately due and
payable.

24.     Plaintiff/Mother Rebekah McClelland paid the $500.00 "Advance Tuition
Deposit" on behalf of Manny on or before the re-enrollment deadline of February, or otherwise
to the satisfaction of Ruffing, without protest or reservation of rights.  Furthermore, to the best of
Plaintiff's knowledge and belief, Plaintiff never fell in arrears on Ruffing tuition, never caused
discord among Ruffing faculty and staff, nor demand any special treatment for herself as the
mother of an autistic child.

25.     Nothing in Ruffing's "2015-2016 Reservation Agreement" permitted Ruffing,
having accepted the $500.00 "Advance Tuition Deposit" from Plaintiff, to then unilaterally
terminate Manny's enrollment, without the happening of an event subsequent to the deposit as
specified in the agreement's language as quoted above.

26.     After terminating Manny's enrollment in May of 2015, Ruffing has refused to
negotiate or discuss re-enrolling Manny, nor has it discussed to what extent—if any—further
accommodations might have to be made based upon Manny's autism.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment under the ADA)

27.     Plaintiffs re-allege and reincorporate the allegations set forth in Paragraphs One through Twenty-Six of their Complaint as if fully rewritten herein.

28.     Defendant Ruffing Montessori School holds itself out to the public as an academic institution that provides a Montessori style of education, and as such, invites members of the general public to apply for admission to the school on a yearly basis or as otherwise decided by the Ruffing administration.

29.     Although Ruffing does not accept or utilize state or federal funding in its operation, and is an otherwise private school, Defendant Ruffing's operation as an institution for education holding itself out to the public as such, nevertheless constitutes a "public accommodation" as that term is defined under the ADA Title III, and more specifically, 42 U.S.C. §12181(7)(J), and also inasmuch as Ruffing's operation affects commerce.

30.     Ruffing's operation as a public accommodation affects commerce inasmuch as it participates in and places goods and services within the stream of interstate commerce, including but not limited to the purchase of food, supplies, learning materials, desks, and other goods necessary for the operation of a Montessori school.

31.     Under the ADA, as a public accommodation affecting commerce, Ruffing is prohibited from discriminating against any individual on the basis of disability, as such relates to the disabled individual's ability to participate in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations offered by Ruffing.

32.     Due to his autism, the Minor Plaintiff is a disabled individual under Title III of the ADA and the regulations promulgated pursuant thereto, and therefore falls within the zone of protection afforded by Title III and 28 C.F.R. Part 36.

33.     Plaintiff McClelland disclosed to Defendants that Manny had autism, as early as 2012, thereby communicating to Ruffing that Manny had a disability recognized by the ADA. Ms. McClelland also requested reasonable accommodations so that Manny would have access to Defendant's Montessori program.

34.     While at first providing some modest accommodations, Ruffing completely disenrolled Manny from the academy in May 05 2015, prior to the commencement of the 2015-2016 academic year, thereby signaling an end to the provision of any accommodations for Manny's autism, to his detriment.

33.     Ruffing's summary termination of enrollment of the Minor Plaintiff was due to his autism and thus constituted *per se* discrimination under the ADA inasmuch as it constituted a *per se* denial of the opportunity for Manny to participate in or benefit from the activities, goods, services, facilities, privileges, advantages, and accommodations offered by Ruffing to other students.

34.     Furthermore, Ruffing failed to make reasonable accommodations in policies, practices, or procedures, when such modifications were necessary to afford individuals with autism, including the Minor Plaintiff, the opportunity to participate in and the actual participation in the activities, goods, services, facilities, privileges, advantages or accommodations that Ruffing offered to other nondisabled students, and thus committed unlawful discrimination in violation of Title III of the ADA, all as indicated through its disenrollment of the Minor Plaintiff

11

and its refusal to reconsider any of its actions.  For specific factual allegations, see *supra* at ¶¶13-21 and accompanying footnotes.

35.    Moreover, Ruffing failed to take such steps as were necessary to ensure that no individual with autism, including Manny, was excluded, denied services, segregated or otherwise treated differently than other individual, nor did Ruffing take any steps necessary to prevent Manny's summary disenrollment from the school (before the 2015-2016 school year had even begun), as evidenced by Ruffing's refusal to provide, and the lack of any auxiliary aids and services offered to accommodate Manny's autism.

36.    Upon information and belief, Defendant McNamara and Defendant Coticchia, individually and acting in concert, were the administrative personnel responsible for the discriminatory treatment as described above.

37.    Furthermore, upon information and belief, Defendant McNamara and Defendant Coticchia, individually and acting in concert, and acting as agents and administrators of Ruffing, utilized standards or methods or criteria of administration that had the effect of discriminating against the Minor Plaintiff, to wit, their refusal to accept Manny for continued enrollment in Ruffing and his summary disenrollment from Ruffing—all due to the autism suffered by Manny—as well as the failure to provide any accommodation or policy that would have allowed Manny to remain enrolled at Ruffing.

38.    The United States Supreme Court in *PGA Tour v. Casey Martin*, 532 U.S. 661 (2001), held that individualized, actual impact analysis must be applied where, as here, a person with a disability is seeking a limited waiver or other policy modification that is needed to access

a public accommodation. The Court also held that reasonable accommodations must be granted unless doing so would "fundamentally change" the character of the public accommodation.

39. Defendants did not employ an individualized, actual impact analysis or examine the likely impact of according the requested accommodations (or in the alternative, by unilaterally disposing of any existing accommodations) but rather disenrolled the Minor Child with reckless indifference solely by reason of his disability, and Defendant's refusal to accommodate the same, and in an arbitrary manner treated Manny in a disparate manner from other students at Ruffing.

40. A justiciable controversy exists and there are no administrative remedies that Plaintiffs' are required to exhaust; notwithstanding the foregoing, the Plaintiffs' have filed a grievance with the United States Attorney General's Office.

42. Accordingly, this Court should declare that Defendants have discriminated against Manny and his Mother under the ADA with reckless abandon, malice, and in bad faith, declare Plaintiffs' status as a prevailing party and grant Plaintiffs' leave to submit an application for attorney fees and costs pursuant to the fee-shifting provisions of the ADA and any other applicable fee authorizing statutes.

## SECOND CAUSE OF ACTION
### (Injunctive Relief and Appointment of Monitor)

43. Plaintiffs re-allege and reincorporate the allegations set forth in Paragraphs One through Forty-Two of their Complaint as if fully rewritten herein.

44. The Minor Child has been irreparably harmed and victimized by Defendants' discriminatory actions and policies.

45. By reason of Defendants' discriminatory acts and policies and their reckless indifference to Plaintiffs' rights, Defendants are likely to continue to discriminate against and

victimize other applicants to Ruffing Montessori School who have an "official" diagnosis on the autism spectrum, but who would be suitable candidates for admission with reasonable accommodations.

46.     This Court is empowered to direct appropriate injunctive relief to ensure Defendants' compliance with the ADA, and to appoint a monitor to supervise Defendants' compliance with the ADA in the application, admission, and training process. As a direct and proximate result of Defendants' discriminatory actions and omissions, as described above, Plaintiffs have suffered and will continue to suffer extreme and irreparable consequential damages, including but not limited to mental injury, pain and suffering, emotional harm and distress, economic and emotional damage, social embarrassment and stigmatization, and undue publicity; the Minor Plaintiff has further suffered social, emotional and developmental injury and education deprivation, academic and social digression and extreme emotional distress.  Plaintiff Ms. McClelland has also suffered loss of filial consortium.

### THIRD CAUSE OF ACTION
#### (Violation of R.C. 4112.02(G))

47.     Plaintiffs re-allege and reincorporate the allegations set forth in Paragraphs One through Forty-Six of their Complaint as if fully rewritten herein.

48.     As a direct and proximate result of the conduct described above, the Plaintiffs have been denied participation in and the benefits of a Montessori education operated by Defendants.  By discharging Manny and terminating his enrollment from the school, without the benefit of any type of administrative review or hearing, and their refusal to provide reasonable accommodations as described above, the Defendants have discriminated against the Minor

Plaintiff because of his disability in violation of R.C. 4112.02(G) and applicable regulations promulgated pursuant thereto.

49.     As a direct and proximate result of Defendants' discriminatory actions and omissions, as described above, Plaintiffs have suffered and will continue to suffer extreme and irreparable consequential damages, including but not limited to mental injury, pain and suffering, emotional harm and distress, economic and emotional damage, social embarrassment and stigmatization, and undue publicity; the Minor Plaintiff has further suffered social, emotional and developmental injury and education deprivation, academic and social digression and extreme emotional distress.  Plaintiff Ms. McClelland has also suffered loss of filial consortium.

### FOURTH CAUSE OF ACTION
#### (Intentional Infliction of Emotional Distress)

50.     Plaintiffs re-allege and reincorporate the allegations set forth in Paragraphs One through Forty-Nine of their Complaint as if fully rewritten herein.

51.     Defendants' intentional and purposeful actions as described above, including but not limited to (a) Defendants' intentional discrimination against Plaintiffs and intentional exclusion of the Minor Plaintiff from participating in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations offered by Ruffing, (b) Ruffing's intentional failure to make reasonable accommodations in policies, practices, or procedures, when such modifications were necessary to afford individuals with autism, including the Minor Plaintiff, the opportunity to participate in and the actual participation in the activities, goods, services, facilities, privileges, advantages or accommodations that Ruffing offered to other nondisabled students, and thus committed unlawful discrimination in violation of Title III of the ADA and federal and state anti-discrimination statutes identified above, and (c) Ruffing's

intentional failure and refusal to take such steps as necessary to ensure that no individual with autism, including Manny, was excluded, denied services, segregated or otherwise treated differently than other individual, as evidenced by Ruffing's refusal to provide, or due to the absence of, any auxiliary aids and services, individually and collectively, all of which were intentionally and purposefully done with actual malice, ill-will and discriminatory motive, and as against public policy, in order to deprive the Plaintiffs of rights, goods, services and activities enjoyed by other non-disabled, non-Hispanic, non-Latino individuals.

52.    As a direct and proximate result of Defendants' discriminatory, purposeful, intentional, and malicious actions and omissions, as described above, Plaintiffs have suffered and will continue to suffer extreme and irreparable consequential damages, including but not limited to mental injury, pain and suffering, emotional harm and distress, economic and emotional damage, social embarrassment and stigmatization, and undue publicity; the Minor Plaintiff has further suffered social, emotional and developmental injury and education deprivation, academic and social digression and extreme emotional distress.  Plaintiff Ms. McClelland has also suffered loss of filial consortium.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Rebekah McClelland, individually and on behalf of and as next friend of the Minor Plaintiff, Manuel DeJesus IV, respectfully pray for the following:

I.    On the First and Second Causes of Action, be it pursuant to one or both:

A.    A finding and declaration that the Defendants' conduct constituted a violation of the Title III of the Americans with Disabilities Act and all

regulations promulgated thereunder and that Defendants discriminated against the Plaintiff Minor Child because of his autism; and

B.      Then issuance of a mandate from this Court directing Defendants to establish internal policies, procedures, and criteria with respect to how it will accommodate disabilities, including autism, under the ADA, and conduct at least two mandatory universal (all staff and all employees) trainings annually designed to promote compliance with the requirements of the ADA;

C.      The issuance of a mandate from this Court appointing a monitor for a period of at least three years, to be compensated on an hourly basis by Defendant Ruffing at rates set by the Court, to render and file quarterly reports with the Court reporting as to Defendants' compliance with the ADA in the application, admission, and teaching process, and to certify the extent to which Defendants have conducted the mandatory trainings ordered by the Court;

D.      The issuance of an Order declaring Plaintiffs' status as a prevailing party; and

E.      An order granting Plaintiffs leave to submit a fee application pursuant to the fee shifting provisions of the ADA and any other fee authorizing statutes[8]

---

[8] Plaintiffs' claims have also been referred to the United States Attorney General, who is empowered to seek a civil penalty and other damages.  42 U.S.C. §12188(b)

II.     On the Third Cause of Action, a finding and declaration that Defendants' conduct, jointly and severally, constituted a violation of Ohio's anti-discrimination law, as codified at Ohio Revised Code §4112.02(G) and all regulations promulgated thereunder; and an award of all damages proven thereunder, in favor of Plaintiffs against each and every Defendant, jointly and severally, in an amount to be determined at trial or otherwise.

III.    On the Fourth Cause of Action, a finding and a declaration that Defendants' conduct individually and collectively constituted purposeful, intentional, and malicious discrimination against Plaintiffs on account of disability, and a finding that such conduct was outrageous, done in bad faith, beyond the pale of civilized society, and motivated by ill-will, malice, and hatred toward the Plaintiffs, and a concomitant finding that the Plaintiffs suffered and will continue to suffer severe and permanent emotional damages as set forth above; and an award compensating the Plaintiffs for all damages suffered thereunder, and an award of all damages proven thereunder, in favor of Plaintiffs and against each and every Defendant, jointly and severally, in an amount to be determined at trial or otherwise.

IV.    On all Causes of Action, a finding and declaration that Plaintiffs qualify as the prevailing parties in this case and, pursuant to ADA Title III, 42 U.S.C. §12205, Ohio Revised Code §4112.99, and any other applicable laws of these United States or the State of Ohio, an award of attorney fees, costs, and expenses of bringing suit, whether or not taxed as costs; and

V.      Any other and further such legal or equitable relief as this Court deems just and

proper.


                                    Respectfully submitted,


                                    /s/Michael C. Asseff_____
                                    MICHAEL C. ASSEFF (0068698)
                                    29550 Detroit Road
                                    Suite 300
                                    Westlake, Ohio 44145
                                    (440) 521-1658
                                    Fax: (440) 617-0359
                                    Email: mcasseff@aol.com
                                    **Attorney for Plaintiffs**


                                    /s/Scott J. Orille_____
                                    SCOTT J. ORILLE  (0069192)
                                    KAHN KRUSE CO., L.P.A.
                                    The Galleria & Towers at Erieview
                                    1301 East Ninth Street, Suite 2200
                                    Cleveland, OH 44114
                                    Telephone: (216) 579-4114
                                    Facsimile: (216) 579-0605
                                    E-mail: info@kahnkruse.com
                                    **Co-Counsel for Plaintiffs**